1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

HAJI K DUKUREH, et al.,

11

Plaintiffs,

12

v.

13

JOHN C. HULLETT, et al.,

14

Defendants.

C11-1866 TSZ

ORDER

15     THIS MATTER comes before the Court on Defendants' Motion to Dismiss,

16 docket no. 23, the Plaintiffs' claims under Federal Rules of Civil Procedure 12(b)(1) and

17 12(b)(6).  Having reviewed the pleadings, motions, and declarations filed by the parties,

18 the Court hereby GRANTS Defendants' Motion to Dismiss and enters the following

19 order:

20     **Background**

21     Haji Dukureh is a native and citizen of Gambia who entered the United States in

22 2006.  Complaint ¶ 3.1, docket no. 1.  He was granted parole into the U.S., which

23

ORDER - 1

1   remained valid until February 17, 2007.  Docket no. 25, Ex. 3 & 4, at 11.  Both his

2   passport and Arrival Departure Record (I-94) reflect this date.  Id.  On November 7,

3   2008, Dukureh was at Seattle-Tacoma International Airport to fly to Anchorage, Alaska.

4   Compl. ¶ 3.2.  The purpose of the trip was to marry his girlfriend (now wife), Crystal

5   Nanuk, who is a native U.S. Citizen and the mother of Dukureh's son.  Id.  At the

6   security checkpoint, Dukureh showed his boarding pass and Washington Driver's

7   License to a Transportation Security Agency ("TSA") officer.  Id. ¶ 3.3.  As the TSA

8   officer reached to hand the license and boarding pass back to Dukureh, Defendant

9   Customs and Border Patrol ("CBP") officer John Hullett allegedly grabbed the

10  documents and told Dukureh to "Come with me."  Id. ¶ 3.4.  Hullett led Dukureh ten to

11  twenty feet away into a security area.  Id. ¶ 3.5.  The other two named defendants,

12  Eugene Skinner and Donald Kalbach,[1] are alleged to have witnessed the interaction.  Id.

13       After seeing the expired stamp on Dukureh's passport, Defendants' handcuffed

14  Dukureh and escorted him to a CBP office.[2]  Dukureh alleges that the arresting officers

15  never read him constitutionally-mandated Miranda rights or the "mini-Miranda" rights

16  required by 8 C.F.R. 287.3.  Additionally, he claims Defendants filled out forms based on

17

18

19  _____

20  [1] Kalbach is Skinner and Hullett's supervisor.  Docket no. 29, Ex. 1, at 50 (Immigration court transcripts).

21  [2] Dukureh's complaint suggests that Hullett handcuffed Dukureh, Compl. ¶ 3.6-3.7, but Defendants say Skinner handcuffed him after first verifying the expiration of Dukureh's parole with CBP's Sea-Tac passenger analysis unit.  Defs.' Mot. to Dismiss at 3.

22

23

ORDER - 2

1   information they knew to be false,[3] id. ¶ 3.1, and that he was denied his request to call an

2   attorney.  Docket no. 29, Ex. 1, at 31.

3   Dukureh was detained at the Northwest Detention Center for almost seven months.

4   Id. ¶ 3.17.  While detained, Dukureh challenged his arrest and continued custody before a

5   "series of different Immigration Judges."  Id. ¶ 3.12.  Dukureh claims "almost all of [the

6   Immigration Judges] had not had the opportunity to review the files and records before

7   they had stepped in the courtroom."  Id.

8   In December, 2008, Dukureh filed a motion to suppress and terminate the removal

9   proceedings, making the same Miranda and Fourth Amendment claims made here.

10  Docket no. 25, Ex. 10, at 2.  In these initial proceedings, the three named Defendants

11  testified that they worked closely with the TSA on an operation called "Operation Paper

12  Chase," but Dukureh claims the testimony was false and contradictory.  In March 2009,

13  an immigration judge denied Dukureh's motion to terminate the removal proceedings,

14  finding that "the testimony of all three officers [the named defendants] regarding

15  Operation Paper Chase was remarkably consistent."  Docket no. 25, Ex. 10, at 8.  The

16  immigration judge also found that Dukureh's Fifth Amendment rights were not violated

17  by the failure to read Miranda rights, that the officers had objectively reasonable grounds

18  to stop and arrest Dukureh, precluding a Fourth Amendment violation, and that the

19  Defendants did not violate the mini-Miranda requirement of 8 C.F.R. § 287.3.  Docket

20  no. 25, Ex. 10, at 6-14.

21

22  [3] It is unclear from the complaint what information was allegedly false.  See Compl. ¶ 3.10.

23

ORDER - 3

1    Dukureh appealed this ruling to the Board of Immigration Appeals and the Board

2    denied the appeal.  See docket no. 25, Exs. 11, 12.  Dukureh proceeded to file a renewed

3    motion to suppress and terminate the proceedings.  Docket no. 25, Ex. 13.  In May, 2009,

4    an immigration judge who "had the time and opportunity to carefully review the

5    pleadings and testimony from the prior proceedings" ordered that Dukureh be released on

6    bond.  Compl. ¶ 3.16.  During this time period, Dukureh married Nanuk, a U.S. citizen,

7    leading the immigration judge to terminate the removal proceedings in October, 2009.

8    Docket no. 25, Ex. 15.

9    Dukureh and Nanuk filed this Bivens action against Hullett, Skinner, and Kalbach,

10   as well as unnamed federal agents 1-50.  Dukureh alleges that Defendants violated his

11   Fourth Amendment right to be free from unreasonable searches and seizures by arresting

12   him without cause; his Fifth Amendment rights under Miranda by failing to advise him of

13   his rights; and his Fifth Amendment right to due process by offering false testimony.

14   Dukureh also alleges Defendants failed to advise him of his "mini-Miranda" rights under

15   8 C.F.R. § 287.3, Compl. ¶ 3.10, but he does not note this as a separate "cause of

16   action."[4]  Compl. ¶¶ 5.1-5.8.  The complaint does not state a separate legal basis for

17

18

19

20   _____

21   [4] This claim fails regardless of whether it is properly plead because 8 C.F.R. § 287.3 does not create
     substantive rights.  See 8 C.F.R. § 287.12 ("These regulations do not, are not intended to, shall not be
     construed to, and may not be relied upon to create any rights, substantive or procedural, enforceable at
22   law by any party in any matter, civil or criminal.").

23

ORDER - 4

1  Nanuk's claims against Defendants, but does allege that she suffered emotional distress

2  resulting from Defendants' violation of Dukureh's constitutional rights.  Compl. ¶ 5.2.[5]

3      Defendants move to dismiss on the basis that: (1) Nanuk has no standing; (2) the

4  Court lacks jurisdiction under 8 U.S.C. § 1252(g); (3) Bivens does not extend to

5  Dukureh's claim under Ninth Circuit precedent; and (4) the Defendants have qualified

6  immunity.

7  **Discussion**

8      **I.      Standard**

9      Under Rule 12(b)(1), a party may challenge the Court's subject matter jurisdiction

10  by motion to dismiss.  The party invoking federal jurisdiction bears the burden of proof.

11  Id.  To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint

12  requires only a "short and plain statement of the claim showing that the pleader is entitled

13  to relief."  Fed. R. Civ. P. 8.  But the claim must be "plausible on its face."  Bell Atl.

14  Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the

15  plaintiff pleads factual content that allows the court to draw the reasonable inference that

16  the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678

17  (2009).  Plausibility lies between possibility and probability.  Id.  The Court accepts "all

18  allegations of material fact as true and construes the pleadings in the light most favorable

19  to the plaintiffs."  Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th

20  

21  [5] Dukureh does not state the specific basis of his claims against John/Jane Does 1-50, other than that these
unknown federal officials allegedly participated in maintaining and filing briefing for the removal
22  proceedings.  See Compl. ¶ 3.16; Resp. at 7.

23  

ORDER - 5

1    Cir. 2008).  But the Court is "not bound to accept as true a legal conclusion couched as a

2    factual allegation."  Iqbal, 556 U.S. at 678 (citations omitted).

3    **II.       Jurisdiction**

4       Defendants claim that 8 U.S.C. § 1252(g) bars the Court from exercising

5    jurisdiction over Dukureh's claims.  This is incorrect.

6       8 U.S.C. § 1252(g) provides that:

7           Except as provided in this section and notwithstanding any other
        provision of law (statutory or nonstatutory) . . . no court shall have
8       jurisdiction to hear any cause or claim by or on behalf of any alien arising
        from the decision or action by the Attorney General to commence
9       proceedings, adjudicate cases, or execute removal orders against any alien
        under this chapter.
10
     In Reno v. American-Arab Anti-Discrimination Committee, 525 U.S. 471, 482 (1999),
11
     the Supreme Court emphasized that this provision applies only to the three discrete listed
12
     actions: the commencement of proceedings, adjudication of cases, and execution of
13
     removal orders.  Section 1252(g) must be interpreted narrowly, United States v.
14
     Hovsepian, 359 F.3d 1144, 1155 (9th Cir. 2004), as it "was directed against a particular
15
     evil: attempts to impose judicial constraints upon prosecutorial discretion." Reno, 525
16
     U.S. at 485 n.9.  Courts still have jurisdiction over "many other decisions or actions that
17
     may be part of the deportation process—such as the decisions to open an investigation
18
     [or] to surveil the suspected violator . . . ." Id. at 482.
19
        Defendants argue that Section 1252(g) strips this Court of jurisdiction over
20
     Dukureh's Fourth Amendment and Miranda claims because those claims directly relate to
21

22

23

ORDER - 6

1  the decision to commence removal proceedings.[6]  Defendants primarily rely on Sissoko

2  v. Rocha, 509 F.3d 947 (9th Cir. 2007), where the alien plaintiff sued under Bivens and

3  alleged that he was detained in violation of the Fourth Amendment.  There, the plaintiff

4  told an immigration official that he was afraid of persecution if returned to his home

5  country.  Id. at 949.  This fear led to his detention because 8 U.S.C.

6  § 252(b)(1)(B)(iii)(IV) provides that "[a]ny alien subject to the procedures under this

7  clause shall be detained pending a final determination of credible fear of persecution and,

8  if found not to have such a fear, until removed."  See id.  Thus, because the defendant

9  decided to commence removal proceedings, he was under a statutory obligation to detain

10  the plaintiff until the alleged fear could be investigated.  The decision to detain arose out

11  of the decision to commence proceedings.

12         Here, the facts are reversed.  The decision to commence proceedings arose out of

13  the decision to stop and arrest Dukureh.  Dukureh's suit challenges the method of

14  investigation and arrest, not the decision to commence proceedings.

15         Defendants claim that Section 1252(g) still applies because their "investigation . . .

16  culminated with Officer Skinner placing Mr. Dukureh into removal proceedings."  Mot.

17  to Dismiss at 11.  However, the Supreme Court has rejected this argument.

18             There are of course many other decisions or actions that may be part
           of the deportation process—*such as the decisions to open an investigation,*
19         *to surveil the suspected violator*, to reschedule the deportation hearing, to
           include various provisions in the final order that is the product of the
20         adjudication, and to refuse reconsideration of that order.  It is implausible

21  _____

22  [6] Defendants concede that the Court has jurisdiction over Dukureh's claims relating to false testimony.

23

ORDER - 7

1    that the mention of three discrete events along the road to deportation was a

2    shorthand way of referring to all claims arising from deportation
     proceedings.

3    Reno, 525 U.S. at 482 (emphasis added).  Thus, Section 1252(g) does not strip the Court

4    of jurisdiction over Dukureh's Bivens claims, and the Court may reach the merits.[7]

5    **III.**    ***Bivens* claim**

6        Defendants argue that the Ninth Circuit has foreclosed extending Bivens to this

7    case.  In Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, the

8    Supreme Court held that federal courts have inherent authority to award damages to

9    plaintiffs whose federal constitutional rights were violated by federal officials.  403 U.S.

10   388, 395 (1971).  But "the Supreme Court has repeatedly rejected Bivens claims outside

11   the [Fourth Amendment] context discussed in that specific case and has 'extended it

12   twice only: in the context of an employment discrimination claim in violation of the Due

13   Process Clause, Davis v. Passman, 442 U.S. 228 (1979); and in the context of an Eighth

14   Amendment violation by publicly employed prison officials, Carlson v. Green, 446 U.S.

15   14 (1980).'"  Mirmehdi v. United States, 09-55846, 2012 WL 2044804, at *3 (9th Cir.

16   June 7, 2012) (quoting Arar v. Ashcroft, 585 F.3d 559, 571 (2d Cir. 2009) (en banc)).

17       The Court has "focused increased scrutiny on whether Congress intended the

18   courts to devise a new Bivens remedy."  W. Radio Services Co. v. U.S. Forest Serv., 578

19   F.3d 1116, 1119 (9th Cir. 2009).  If Congress's failure to provide monetary damages "has

20

21

22   [7] Because the Court concludes that 8 U.S.C. 1252 (g) does not apply, the Court does not reach the issue raised by Dukureh of whether the statute is constitutional.

23

ORDER - 8

1  not been inadvertent, courts should defer to its judgment." Berry v. Hollander, 925 F.2d

2  311, 314 (9th Cir. 1991) (citations omitted).  In Wilkie v. Robbins, 551 U.S. 537 (2007),

3  the Court developed a "two-step analysis for determining congressional intent as to the

4  appropriateness of a Bivens remedy." W. Radio Services Co., 578 F.3d at 1120 (citing

5  Wilkie, 551 U.S. at 550).  First, the Court must consider whether there is "any alternative,

6  existing process for protecting the plaintiffs' interests.  If there is such an alternative

7  remedy, [the] inquiry stops.  If there is not, [the Court] proceed[s] to the next step and

8  ask[s] whether there nevertheless are 'factors counseling hesitation' before devising such

9  an implied right of action." Mirmehdi, 2012 WL 2044804, at *4 (citing W. Radio

10  Services Co., 578 F.3d at 1120) (internal quotations omitted).

11      Defendants argue that Mirmehdi bars Dukureh's Bivens action.  In Mirmehdi,

12  federal agents arrested the alien plaintiffs for immigration violations after the plaintiffs'

13  attorney told federal authorities that the plaintiffs supported an Iranian terrorist group. Id.

14  at *1.[8]  Prior to being released, the plaintiffs unsuccessfully challenged the charges

15  against them on direct appeal of their detention, during the merits of asylum application

16  proceedings, and in a petition for habeas corpus. Id. at *2.  After their release, the

17  plaintiffs filed a Bivens claim against a Federal Bureau of Investigation ("FBI") agent

18  and an Immigration and Naturalization Service ("INS") agent for unlawful detention and

19  conspiracy to violate their civil rights. Id.  Plaintiffs also claimed that the FBI agent

20  _____

21  [8] The original version of this opinion is published at Mirmehdi v. United States, 662 F.3d 1073 (9th Cir.
2011).  The Court has cited to the amended opinion and order denying rehearing, which is not yet
22  published.

23

ORDER - 9

1    intimidated witnesses and knowingly lied to the immigration judge during proceedings.

2    Id.  The Ninth Circuit held that Bivens does not "allow the Mirmehdis to sue federal

3    agents for wrongful detention pending deportation . . ." because the context of

4    immigration provides alternative remedies and factors counseling hesitation.  Id. at *5.

5    The alternative remedies included not just the "substantial, comprehensive, and intricate

6    remedial scheme," id. at *4 (quoting Arar, 585 F.3d at 572), created by Congress for

7    immigration, but also habeas.  The court held that Congress's failure to include monetary

8    relief in immigration proceedings "can hardly be said to be inadvertent, given that despite

9    multiple changes to the structure of appellate review in the Immigration and Nationality

10   Act, Congress never created such a remedy."  Id. at *5.  Additionally, the court held that

11   issues of diplomacy, foreign policy, and national security counseled hesitation when

12   dealing with immigration.  Id.

13          The rationale in Mirmehdi applies to Dukureh's claims.  Dukureh argues that this

14   case is distinguishable because, like the plaintiff in Bivens, Dukureh claims Fourth

15   Amendment violations by federal agents during an initial arrest.  But it is "well

16   established that immigrants' remedies for vindicating the rights which they possess under

17   the Constitution are not coextensive with those offered to citizens."  Id. at *4 (citing

18   Reno, 525 U.S. at 488).  Moreover, Dukureh had and exercised alternative remedies.

19   Dukureh brought his Fourth Amendment and Miranda challenges during the immigration

20   proceedings and could also have done so through habeas.

21          Mirmehdi similarly disallows Dukureh's claims that Defendants' violated his Fifth

22   Amendment due process rights by falsely testifying in his immigration proceedings.

23

1  Taking the facts alleged in Dukureh's complaint as true, it may be possible or even

2  "plausible" that the agents lied about their work with the TSA.  Even so, a <u>Bivens</u> claim

3  is not the proper course of redress.  In <u>Mirmehdi</u>, the plaintiffs alleged that the FBI agent

4  "knowingly lied" to convince the immigration judge to revoke their bond, resulting in the

5  wrongful detention.  <u>Id.</u> at *2.  As in <u>Mirmehdi</u>, Dukureh had the opportunity to

6  challenge the agents' credibility during the immigration proceedings (which he did) and

7  to challenge their testimony through habeas (which he did not).  Thus, the alternative

8  remedial proceedings available to Dukureh foreclose a <u>Bivens</u> remedy.  Moreover, the

9  same factors that counseled hesitation in <u>Mirmehdi</u>—national security and foreign

10  policy—apply here and throughout the immigration context.

11       Dukureh also argues that <u>Mirmehdi</u> left open the possibility that an alien may

12  challenge the constitutionality of his detention in certain cases.  Dukureh's support for

13  this argument is Judge Silverman's concurrence, where he wrote, in full:

14           Although I concur in the opinion of the court, I write separately to
         emphasize that this case does not present the issue of whether illegal
15       immigrants could *ever* bring a <u>Bivens</u> action.  In fact, we have previously
         allowed an illegal immigrant to bring a <u>Bivens</u> action.  <u>See</u> <u>Papa v. United</u>
16       <u>States</u>, 281 F.3d 1004, 1010-11 (9th Cir. 2002) (holding that immigrant
         could bring <u>Bivens</u> action for alleged due process violations during
17       immigration detention).  However, in *this* case, I agree with my colleagues
         that the plaintiffs lack an implied right of action under <u>Bivens</u>.

18  <u>Id.</u> at *7 (Silverman, J., concurring) (emphasis in original).

19
20       Even assuming that <u>Mirmehdi</u> did not foreclose all <u>Bivens</u> actions by illegal

21  immigrants, this case is more factually similar to <u>Mirmehdi</u> than <u>Papa</u>.  In <u>Papa</u>, a

22  detained alien was killed by another detainee, and the decedent's family members filed a

23

ORDER - 11

1  Bivens action against "John Doe" federal agents.  Id. at 1108.  The court held that

2  allegations that guards knowingly placed the alien in danger in disregard of, or with

3  deliberate indifference to, his due process rights, stated a claim under Bivens.  Id. at

4  1011.  The alien's estate and survivors initially sought recovery under the Federal Tort

5  Claims Act through administrative proceedings, but the INS denied the claims and told

6  the plaintiffs to bring claims in federal court within six months.  Id. at 1108.  However,

7  the court in Papa did not address the sufficiency of the INS proceedings as an alternative

8  remedial procedure or other reasons to decline extending Bivens, as this case preceded

9  the two-part analysis solidified by the Supreme Court in Wilkie.  Thus, to the extent that

10  Papa is inconsistent with Mirmehdi or Wilkie, it has been overruled.  Moreover, Papa is

11  distinguishable from this case because a Bivens claim likely became the plaintiffs' only

12  meaningful course of relief after the death of the alien detainee.  Here, the removal

13  proceedings and habeas offered Dukureh the potential relief of his release.

14      In sum, "the design of [this] Government program suggests that Congress has

15  provided what it considers adequate remedial mechanisms for constitutional violations

16  that may occur in the course of its administration . . . ."  W. Radio Services Co., 578 F.3d

17  at 1120 (quoting Schweiker v. Chilicky, 487 U.S. 412, 423 (1988)).  As such, a Bivens

18  remedy is not appropriate.[9]

19

20

21

22  [9] Having dismissed the claim on this basis, the Court need not address Nanuk's standing or whether Officer Kalbach retains qualified immunity.

23

ORDER - 12

1    **Conclusion**

2        For the foregoing reasons, Defendants' Motion to Dismiss, docket no. 23, is

3    GRANTED, and this case is dismissed with prejudice.

4        IT IS SO ORDERED.

5        The Clerk is directed to send a copy of this Order to all counsel of record. .

6        Dated this 2nd day of August, 2012.

7

8                                         _____
                                         THOMAS S. ZILLY
9                                         United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

ORDER - 13